UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 79TH ACCLIVITI LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-14199 |
| | ) |
| OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, 79th Accliviti LLC, by its undersigned attorneys, for its complaint against Defendant, Owners Insurance Company, states:

## FACTS

1. Plaintiff, 79th Accliviti LLC ("Accliviti"), is an Illinois citizen, being an Illinois limited liability company with its principal place of business in Chicago, Illinois, and the owner of the commercial building located at 1413-1423 East 79th Street in Chicago, Illinois ("the Building").

2. Vincent Lane, who is domiciled in Chicago, Illinois, is the sole member of Accliviti.

3. Defendant, Owners Insurance Company ("Owners"), is a citizen of Ohio and Michigan, being an Ohio corporation with its principal place of business in Lansing, Michigan.

4. This Court has subject matter jurisdiction over this matter pursuant to Title 28, U.S.C. § 1332(c)(1) because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court pursuant to Title 28, U.S.C. § 1391 because the events giving rise to Accliviti's claims occurred in this judicial district. Additionally, Owners does business and/or transacts business in this judicial district and, therefore, it is subject to personal jurisdiction in this judicial district and resides here for venue purposes.

6. Owners issued to Accliviti a commercial property insurance policy effective September 25, 2021 to September 25, 2022 ("the insurance policy" or "the insurance contract"), a copy of which is attached to this Complaint as Exhibit A.

7. Under the insurance policy, Owners insured Accliviti against direct physical loss of or damage to the Building caused by or resulting from fire.

8. The insurance policy also provided coverage for the actual loss of business income sustained by Accliviti due to the necessary suspension of its operations resulting from a fire loss.

9. On or about October 1, 2021, while the insurance policy was in full force and effect, the Building was damaged by fire, including flames, smoke, soot, char, ash and water used to suppress the fire, rendering the Building untenantable and resulting in a loss of business income to Accliviti ("the fire loss").

10. Accliviti duly submitted a claim to Owners for benefits under the insurance policy.

## COUNT I
**(Breach of Contract)**

11. Accliviti re-alleges paragraphs 1 through 10 of the Facts of the Complaint as paragraph 11 of count I of the Complaint.

12. Accliviti has substantially performed all post-loss conditions required by the insurance policy to be performed by it, requested of it, and/or not waived by Owners including, but not limited to, giving prompt notice of the fire loss, otherwise cooperating with Owners in the investigation of the fire loss and ensuing claim, and timely filing suit against Owners.

13. The cost to repair/replace the fire-related damage to the Building exceeds the $920,868.60 estimated by Owners, in that its estimate failed to include all the damage to the Building.

14. Although requested to do so, Owners has failed and refused to prepare an estimate of the cost to repair/replace the fire-related damage to the Building that includes all of the damage, which failure and refusal constitutes a breach of the insurance policy.

15. The actual cash value of the fire-related damage to the Building exceeds the $628,049.41 paid for by Owners, in that its valuation and payment failed to include all of the damage to the Building.

16. Although requested to do so, Owners has failed and refused to pay Accliviti the full actual cash value of the fire loss to the Building, which failure and refusal constitutes a breach of the insurance policy.

17. The rental business income lost by Accliviti due to the fire exceeds the $75,600 paid by Owners, in that (a) the payment failed to include the actual amount of rent being received before the fire for the ten (10) units that were damaged by the fire ($6,700, not $5,400) and operating expenses continuing after the fire, including mortgage and real estate tax payments, and (b) the Building has been unoccupied and untenantable since the fire.

18. Although requested to do so, Owners has failed and refused to pay Accliviti for all of the rental business income it lost due to the fire, which failure and refusal constitutes a breach of the insurance policy.

19. These breaches of the insurance policy were and are the direct and proximate cause of damage to Accliviti in an amount in excess of $75,000.

20. Accliviti also seeks consequential damages it suffered as a result of Owners' breaches of the insurance contract, including loss of business income beyond the insurance policy's $150,000 limit.

21. At the time the insurance contract was entered into on September 25, 2021, Accliviti leased the commercial and residential units in the Building as a source of income.

22. The insurance policy contains a provision contemplating loss of business income in the event of a covered loss that renders the Building untenantable, including loss of rental income.

23. The Building was and remains untenantable after the fire loss.

24. At the time the insurance contract was entered into on September 25, 2021, it was well within the contemplation of Owners that the Building would be and could be rented. As such, it was reasonably foreseeable and within the contemplation of the parties at the time the insurance contract was entered into that the consequences of Owners' delay in making its undisputed actual cash value payments for the Building and Owners' failure to pay for all of the damage to the Building could include: Accliviti's inability to timely repair the damage to the Building; its inability to utilize the Building for its intended business operation as rental property; and loss of rental income beyond the $150,000 limit afforded by the insurance policy.

25. This is an action based on a "written instrument" within the meaning of the Illinois Interest Act and, therefore, Accliviti is entitled to prejudgment interest.

WHEREFORE, Plaintiff, 79th Accliviti LLC, prays for judgment in its favor and against Defendant, Owners Insurance Company, in an amount in excess of $75,000, plus prejudgment interest, consequential damages, and costs.

## COUNT II
### (Section 155 Relief)

26. Accliviti re-alleges paragraphs 1 through 24 of count I of the Complaint as paragraph 26 of count II of the Complaint.

27. At the time of the fire loss, Owners' internal claim handling policies, practices, and procedures included compliance with Part 919 of the Illinois Administrative Code and compliance with sections 154.5 and 154.6 of the Illinois Insurance Code.

28. Accliviti is entitled to an award of taxable costs under section 155 of the Illinois Insurance Code by virtue of Owners engaging in the following vexatious and unreasonable conduct including, but not limited to:

(a) failing to pay Accliviti for all amounts due under the insurance policy within 40 days of the fire loss, or by November 10, 2021, which constitutes an unreasonable delay in paying the fire loss and ensuing claim as a matter of law, in violation of the regulations promulgated by the Illinois Director of Insurance within section 919.80 (d)(7)(A) of Part 919 of the Illinois Administrative Code;

(b) failing to provide Accliviti and/or its public insurance adjuster and its legal counsel with reasonable written explanations for the delays in resolving the fire loss and ensuing claim, in violation of the regulations promulgated by the Illinois Director of Insurance within section 919.40 of Part 919 of the Illinois Administrative Code;

(c) failing to acknowledge with reasonable promptness pertinent communications from Accliviti's public insurance adjuster and its legal counsel regarding the fire loss and ensuing claim, in violation of section 154.6(b) of the Illinois Insurance Code and in violation of the regulations promulgated by the Illinois Director of Insurance within section 919.40 of Part 919 of the Illinois Administrative Code;

(d) not attempting in good faith to effectuate a prompt, fair, and equitable settlement of the fire loss and ensuing claim, a claim in which liability was reasonably clear, in violation of section 154.6(d) of the Illinois Insurance Code and in violation of the regulations promulgated by the Illinois Director of Insurance within section 919.50 of Part 919 of the Illinois Administrative Code;

(e) retaining Alliance Environmental Control, Inc. to perform asbestos remediation at the Building, who failed to first obtain a permit for the remediation and who failed to perform clearance testing following the remediation;

(f) failing and refusing to estimate and to pay for all of the damage to the Building without conducting a full, fair, and objective investigation based on all available facts and circumstances, in violation of section 154.6(h) of the Illinois Insurance Code;

(g) unreasonably delaying a $382,706.58 undisputed actual cash value payment for the Building portion of the claim until May 16, 2022, over seven (7) months after the fire, in violation of the regulations promulgated by the Illinois Director of Insurance within section 919.50(a) of Part 919 of the Illinois Administrative Code;

(h) unreasonably delaying a $245,342.83 undisputed actual cash value payment for the Building portion of the claim until August 16, 2023, over 22 months after the fire, in violation of the regulations promulgated by the Illinois Director of Insurance within section 919.50(a) of Part 919 of the Illinois Administrative Code;

(i) only paying $628,049.41 for the actual cash value of the fire-related damage to the Building, a payment which understated the damage and the cost to repair/replace the damage to the Building;

(j) failing to reconcile differences between its repair estimate and Accliviti's repair estimate, contrary to its claim handling practices;

(k) only paying $75,600 for the rental business income lost by Accliviti due to the fire, which payment understated the loss of income, in that it failed to include the actual amount of rent being received before the fire for the ten (10) units that were damaged by the fire ($6,700) and operating expenses continuing after the fire, including mortgage and real estate tax payments;

(l) limiting the loss of rental income to the 14-month period following the fire, despite the Building being untenantable beyond that period, despite failing and refusing to pay the full actual cash value of the fire loss to the Building within that 14-month period, despite not making its first actual cash value payment for the damage to the Building until May 16, 2022, and despite not making it second actual cash value payment for the damage to the Building until August 16, 2023, all of which prevented and hindered Accliviti from repairing the fire-related damage and resuming its rental operations within that 14-month period;

(m) failing to be fair, open, and to carry out its part of the bargain under the insurance contract in good faith, contrary to its claim handling philosophy and claim mission;

(n) refusing to extend the insurance policy's suit limitation period, thus forcing Accliviti to prematurely file suit to preserve its rights under the policy and applicable law; and

    (o)    forcing Accliviti to retain legal counsel to investigate the fire loss and ensuing claim and to sue to recover the benefits that should have been immediately forthcoming under the insurance policy.

WHEREFORE, Plaintiff, 79th Accliviti LLC prays for an award of taxable costs, including reasonable attorney fees, in its favor and against Defendant, Owners Insurance Company.

**Plaintiff Demands Trial by Jury.**


/s/ Edward Eshoo, Jr.
Edward Eshoo, Jr.
Christina M. Phillips
MERLIN LAW GROUP
181 West Madison, Suite 3475
Chicago, Illinois 60602
Telephone: (312) 260-0806
Facsimile: (312) 260-0808
eeshoo@merlinlawgroup.com
cphillips@merlinlawgroup.com
Attorneys for Plaintiff